**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **JOSE ANTONIO RANGEL, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **EP-12-CV-04-KC** |
| | § | |
| **LEVITON MANUFACTURING CO.,** | § | |
| **INC.,** | § | |
| | § | |
| **Defendant.** | § | |

**<u>ORDER</u>**

On this day, the Court considered Jose Antonio Rangel, Luis E. Rivas, Eduardo Reza, and Jesus Octavio Rey Velo's (collectively "Plaintiffs") "Motion to Remand" ("Motion"), ECF No. 5. After due consideration, the Court **GRANTS** the Motion.

**I.    BACKGROUND**

Plaintiffs were employees of Defendant Leviton Manufacturing Company, and worked in Defendant's facility in Juarez, Mexico. Def.'s Notice of and Pet. for Removal Ex. A ("Complaint") ¶ 4, ECF No. 1-1; *see* Def.'s Resp. to Pls.' Mot. to Remand Ex. B. ¶ 2, ECF No. 6-2. In December of 2009, Defendant fired Plaintiffs. Compl. ¶ 4. Plaintiffs contested the firing by initiating labor grievances against Defendant in Mexico. Compl. ¶ 4. The proceedings in Mexico are still in progress. Compl. ¶ 4.

On April 29, 2010, Defendant filed a lawsuit in this Court (the "2010 Lawsuit"). Compl. ¶ 4; Def.'s Resp. to Pls.' Mot. to Remand ("Response") ¶4, ECF No. 6 (*citing Leviton v. Rangel*, No. 3:10-cv-158-KC). In the 2010 Lawsuit, Defendant alleged that Plaintiffs created fraudulent

1

expense reports, converted Defendant's inventory, and misappropriated corporate assets.  Compl.

Ex. A ("2010 Complaint") ¶ 13-15.  Additionally, Defendants sought a declaration that Plaintiffs

"performed work and services for . . . Leviton's United States Corporate entity and not Leviton's

affiliated Mexican National Company."  *Id.* ¶ 8.   Plaintiffs answered and filed counterclaims for

intentional infliction of emotional distress ("IIED"), unconscionable conduct, libel, and for

declaratory relief.  Defs.' Original Answer to Pl.'s Original Compl. Jury Demand and Countercl.

¶¶ 23-26, *Leviton v. Rangel*, No. 3:10-cv-158-KC (W.D. Tex. Sept. 24, 2010), ECF No. 11;

Defs.' Original Answer to Pl.'s Original Compl. Jury Demand and Countercl. ¶¶ 23-26, *Leviton*

*v. Rangel*, No. 3:10-cv-158-KC (W.D. Tex. July 30, 2010), ECF No. 9 (collectively "2010

Answers & Counterclaims").

       The 2010 Lawsuit did not amount to much.  As stated above, Defendant filed its

complaint in April of 2010, and the Court set trial for September 2, 2011.  Am. Scheduling Order

at 1,  *Leviton v. Rangel*, No. 3:10-cv-158-KC (W.D. Tex. July 29, 2011), ECF No. 25.  During

the over one year of litigation, the parties did not take any depositions and did not file any

dispositive motions.  *See* Joint Mot. to Extend ADR Deadline ¶¶ 4-5, *Leviton v. Rangel*, No.

3:10-cv-158-KC (W.D. Tex. July 27, 2011), ECF No. 23 ("2010 Motion to Extend Deadline").

Then, just one month before trial, the parties voluntarily dismissed all of their claims.  *See*

Compl. ¶ 4; All Parties' Joint Stipulation of Dismissal of All Claims Without Prejudice ("2010

Stipulation of Dismissal") ¶¶ 3-5, *Leviton v. Rangel*, No. 3:10-cv-158-KC (W.D. Tex. Aug. 3,

2011), ECF No. 27.

       On November 23, 2011, Plaintiffs filed this lawsuit in Texas state court.  Mot. ¶ 2.

Plaintiffs re-allege their claims for IIED, unconscionable conduct, libel, and for declaratory relief.

Compl. ¶¶ 5-7, 9.  Further, Plaintiffs have added a claim for fraud.  Compl. ¶ 9.  Plaintiffs seek

actual damages, punitive damages, and attorney's fees.  *See* Compl. ¶ 10.

Specifically, Plaintiffs first allege that Defendant filed the 2010 Lawsuit for "the sole

purpose of intentionally inflicting emotional distress upon Plaintiffs."  Compl. ¶ 5.  Second,

Plaintiffs allege that Defendant's offering of a severance package conditioned on a waiver of

their rights under Mexican law was unconscionable conduct.  Compl. ¶ 6.  Next, in their claim

for libel, Plaintiffs allege that Defendant's allegations in the 2010 Lawsuit were false and "were

brought against Plaintiffs maliciously and without due regard for the truthfulness or falsity of the

accusations."  Compl. ¶ 7.  For their fourth claim, Plaintiffs allege that Defendant "fraudulently

falsified documents by forging Plaintiff Reza's signature."  Compl. ¶ 8.  Lastly, Plaintiffs seek a

declaration that the 2010 Lawsuit "was groundless, frivolous, and brought in bad faith and that

Plaintiffs suffered damages as a result of Defendant's conduct."  Compl. ¶ 9.

On January 4, 2012, Defendant removed the case to this Court based on diversity

jurisdiction.  Def.'s Notice of and Pet. for Removal, ECF No. 1.  On January 13, 2012, Plaintiffs

filed this Motion seeking remand to state court.  *See* Mot. ¶ 5.

## II.   DISCUSSION

### A.     Standard

"The district courts of the United States . . .  are courts of limited jurisdiction.  They

possess only that power authorized by Constitution and statute."  *Exxon Mobil Corp. v.*

*Allapattah Servs.*, 545 U.S. 546, 552 (2005) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*,

511 U.S. 375, 377 (1994)) (internal quotation omitted).  By statute, a defendant may remove a

case to the federal district court, in the division embracing the place where such action is pending

in state court, if the district court has original jurisdiction over the matter.  28 U.S.C. § 1441(a)-(b); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  The district court must remand a case to state court if, at any time before final judgment, it determines that it lacks subject matter jurisdiction over the case.  28 U.S.C. § 1447(c).

When a party challenges the jurisdiction of the court, the burden is on the party seeking to preserve the district court's removal jurisdiction.  *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 921-22 (5th Cir. 1997).  Because removal deprives the state court of the opportunity to hear a case properly before it, removal raises significant federalism concerns.  *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941); *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365-66 (5th Cir. 1995).  These federalism concerns mandate that federal courts strictly construe the removal statutes.  *Shamrock Oil*, 313 U.S. at 108-09; *Carpenter*, 44 F.3d at 365-66.  Therefore, federal courts should resolve any doubts about jurisdiction in favor of remand.  *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008) (citing *In re Hot-Hed, Inc.*, 477 F.3d 320, 323 (5th Cir. 2007)).

### B.    Plaintiffs' Motion to Remand

In their Motion, Plaintiffs argue that Defendant has failed to establish federal jurisdiction.  *See* Mot. 2.  Specifically, Plaintiffs argue that the amount in controversy does not exceed $75,000, thus destroying diversity jurisdiction and mandating remand to state court.  Mot. ¶¶ 6-9.  In response, Defendant argues that Plaintiffs' claims for IIED, unconscionable conduct, libel, fraud, and declaratory relief, "involve an amount in controversy greater than $75,000."  Resp. ¶ 11.

A defendant can remove a case to federal court only if the plaintiff could have originally

4

filed the case in federal court.  28 U.S.C. § 1441(a)-(b); *Caterpillar*, 482 U.S. at 392.  District

courts have original jurisdiction where the complaint presents a federal question or where the

parties are diverse and the amount in controversy exceeds $75,000.  *See* 28 U.S.C. §§ 1331-32.

Here, the Complaint contains no federal question.  *See generally* Compl.  Therefore, the

Court will only have original jurisdiction if the parties are diverse and the amount in controversy

exceeds $75,000.  The parties do not dispute that there is diversity of citizenship.  *See* Mot. ¶¶ 6-

9.  Thus, the controlling question is whether the amount in controversy exceeds $75,000.

To determine the amount in controversy, courts generally accept a plaintiff's good faith

claim.  *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938).  However, if

a plaintiff does not state an amount in the complaint, a defendant must prove by a preponderance

of the evidence that the amount in controversy at the time of removal exceeds $75,000.  *Garcia*

*v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638-39 (5th Cir. 2003); *Gebbia v. Wal-Mart Stores*,

*Inc.*, 233 F.3d 880, 883 (5th Cir. 2000).  To determine if a defendant has met this burden, courts

first examine whether it is "'facially apparent' from the plaintiffs' complaint" that the amount in

controversy exceeds $75,000.  *Garcia*, 351 F.3d at 638-39 (quoting *Allen v. R & H Oil & Gas*

*Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995)).  If it is not facially apparent, then the defendant must

present summary judgment-type evidence that the amount in controversy exceeds $75,000.  *Id.*;

*White v. FCI USA, Inc.*, 319 F.3d 672, 675 (5th Cir. 2003).

Plaintiffs have not stated a specific amount of damages.[1]  *See generally* Compl.

---

[1] Under Texas law, Plaintiff is unable to plead a specific amount of damages.  *See* Tex. R. Civ. P. 47(b); *Capital Brick, Inc. v. Fleming Mfg. Co., Inc.*, 722 S.W.2d 399, 401 (Tex. 1986) (explaining that Texas law prevents plaintiffs seeking unliquidated damages from stating a specific amount of damages in their complaint).

Therefore, Defendant must show by a preponderance of the evidence that jurisdiction is either facially apparent or present summary judgment-type evidence to establish jurisdiction. *See Garcia*, 351 F.3d at 638-39; *White*, 319 F.3d at 675.

### 1.    Facially apparent

Determining whether it is facially apparent that the amount in controversy exceeds $75,000 is a fact-specific inquiry. *See Felton v. Greyhound Lines, Inc.*, 324 F.3d 771, 774 (5th Cir. 2003). Courts consider the types of claims, the types of damages sought, and the underlying facts that suggest the extent of the damages. *See id.*; *Chittick v. Farmers Ins. Exch.*, 844 F. Supp. 1153, 1155 (S.D. Tex. 1994). Moreover, common sense may guide a court's analysis. *Allen*, 63 F.3d at 1336; *see also Cross v. Bell Helmets, USA*, 927 F. Supp. 209, 213-14 (E.D. Tex. 1996) (applying "common experience" to a remand analysis).

This common sense standard has resulted in a system of case-by-case determinations. *Hannah v. Allstate Tex. Lloyd's*, No. EP–11–CV–269–KC, 2011 WL 5325257, at *3-4 (W.D. Tex. Nov. 2, 2011) (collecting and analyzing cases in the Fifth Circuit); Rebecca Hild, *Federal Diversity Jurisdiction in the Fifth Circuit: Meeting the Amount in Controversy*, 61 Baylor L. Rev. 296, 315 (2009) ("No clear rules govern what is 'facially apparent.' What is facially apparent will be determined case by case; neither the Fifth Circuit's nor its district courts' decisions can be easily predicted."). However, a case-by-case methodology is not surprising given the federalism concerns inherent in removal. *See Gutierrez*, 543 F.3d at 251; *Felton*, 324 F.3d at 774. The specific facts may lead the Court to doubt it has federal jurisdiction, and federal courts should resolve any doubts about jurisdiction in favor of remand. *See Gutierrez*, 543 F.3d at 251; *Felton*, 324 F.3d at 774.

In this case, Plaintiffs bring five claims: (1) IIED, (2) unconscionable conduct, (3) libel, (4) fraud, and (5) and a request for declaratory relief.  Compl. ¶¶ 5-9.  The gist of Plaintiffs' lawsuit is that Defendant filed the 2010 Lawsuit and fraudulently interfered with a pending lawsuit in Mexico for the sole purpose of harassing Plaintiffs.  *See generally* Compl.  As required by Texas's procedural rules, Plaintiffs' Complaint does not state an amount of damages.  Beyond failing to state an amount, the five page Complaint contains no facts that would help the Court value Plaintiffs' claims.

Because Plaintiffs' Complaint is so sparse, Defendant relies on several arguments to show that the amount in controversy exceeds $75,000.  First, Defendant argues the Court should aggregate the IIED, unconscionable conduct, libel, and fraud claims for all of the Plaintiffs. Resp. ¶ 9.  Second, Defendant argues the Court should aggregate all of the Plaintiffs' punitive damages claims.  Resp. ¶¶ 8-9.  Third, Defendant argues the value of Plaintiffs' declaratory relief alone establishes the amount in controversy exceeds $75,000.  *See* Resp. ¶ 9.  Finally, Defendant argues the Court should include Plaintiffs' counterclaims in the 2010 Lawsuit as part of the amount in controversy.  Resp. ¶ 9.  The Court examines each argument in turn.

### a.      Aggregating multiple plaintiffs

Defendant's first contention — that the Court should aggregate all of the Plaintiffs' claims — lacks support.  Although the law provides for the aggregation of a single plaintiff's multiple claims against a single defendant, it is well established that the law does not aggregate the claims of multiple plaintiffs to determine the amount in controversy.  *Snyder v. Harris*, 394 U.S. 332, 335 (1969); *Allen*, 63 F.3d at 1330-31; *Everett v. Verizon Wireless Inc.*, 460 F.3d 818, 822 (6th Cir. 2006).  For example, if a plaintiff sues a defendant under seven different tort

theories, the law aggregates all of the plaintiff's claims together to determine the amount in

controversy.  *See Snyder*, 394 U.S. at 335; *Everett*, 460 F.3d at 822.  But if there are two

plaintiffs and both sue the same defendant for breach of contract, the court does not aggregate the

two contract claims.  *See Snyder*, 394 U.S. at 333; *Pinel v. Pinel*, 240 U.S. 594, 596 (1916);

*Allen*, 63 F.3d at 1330-31.  In sum, federal law aggregates claims from a single plaintiff, but

generally not across multiple plaintiffs.

Like so many general rules, there is an exception.  Courts aggregate the claims of all of

the plaintiffs if the plaintiffs have a "common and undivided interest."  *Clay v. Field*, 138 U.S.

464, 479-80 (1891) (internal citations omitted); *Allen*, 63 F.3d at 1330-31; *Everett*, 460 F.3d at

822.  "The paradigm cases allowing aggregation of claims are those which involve a single

indivisible res, such as an estate, a piece of property (the classic example), or an insurance

policy."  *Gilman v. BHC Sec.*, 104 F.3d 1418, 1423 (2d Cir. 1997) (internal quotations omitted);

*see Allen*, 63 F.3d at 1330-31.

In this case, Defendant suggests that the Court should aggregate the claims of all of the

Plaintiffs.  *See* Resp. ¶ 9.  But Defendant has not offered any facts to suggest that Plaintiffs's

claims stem from a common and undivided interest, and the Court has found none.  Rather, each

Plaintiff will likely have separate and distinct claims because each Plaintiff presumably suffered

a different amount of damage depending on how the allegedly unconscionable, libelous, and

fraudulent conduct affected each Plaintiff.  *See* Compl. ¶¶ 6-8; *Asociacion Nacional de*

*Pescasores a Pequena Escala o Artesanales de Colom. v. Dow Quimica de Colom. S.A.*, 988

F.2d 559, 563-64 (5th Cir. 1993) (explaining that just because a defendant's one bad act allegedly

affected all of the plaintiffs does not make all of the claims part of a common, undivided

8

interest), *abrogated on other grounds by Marathon Oil Co. v. Ruhrgas*, 145 F.3d 211 (5th Cir. 1998).  Therefore, Defendant cannot aggregate all of the Plaintiffs' claims to establish jurisdiction.

> **b.    Aggregating punitive damages**

Defendant argues that the Court should aggregate all of the Plaintiffs' punitive damages claims.  Resp. ¶¶ 8-9.  Although Defendant is on slightly better footing with its second contention, it too fails.

Prior to 2000, there was some support for Defendant's contention.  The Fifth Circuit in *Allen* held that "because of the collective scope of punitive damages and their nature as individual claims under Mississippi law, we hold that under Mississippi law" the court should aggregate all of the plaintiffs' requests for punitive damages.  *Allen*, 63 F.3d at 1334-35 (1995). Several district courts in Texas then relied on *Allen* and held that a federal court aggregates punitive damages sought under Texas law.  *See Acosta v. Amoco Oil Co.*, 978 F. Supp. 703, 706-07 (S.D. Tex. 1997); *Corley v. Sw. Bell Tel. Co.*, 924 F. Supp. 782, 786 (E.D. Tex. 1996); *In re Norplant Contraceptive Prods. Liab. Litig.*, 907 F. Supp. 244, 246 (E.D. Tex. 1995).

However, since those decisions, the Fifth Circuit has reexamined the issue of aggregating punitive damages.  In *H & D Tire and Automotive-Hardware, Inc. v. Pitney Bowes, Inc.*, 227 F.3d 326, 330 (5th Cir. 2000) ("*H&D Tire I*"), the Fifth Circuit held that punitive damages claims of multiple plaintiffs could not be aggregated.  *Id.*  The court explained that it was bound to follow an earlier controlling opinion, *Lindsey v. Alabama Telephone Co.*, and not *Allen*.  *See id.* at 329-30 (citing *Lindsey*, 576 F.2d 593 (5th Cir. 1978)).  In *Lindsey*, the Fifth Circuit held that the law does not aggregate the punitive damage claims across multiple plaintiffs to establish

9

jurisdiction.  576 F.2d at 595.  To the extent *Allen* is still good law, it is now confined to the

unique circumstances of Mississippi law.  *See H & D Tire & Automotive-Hardware, Inc. v.

Pitney Bowes, Inc.*, 250 F.3d 302, 304-305 (5th Cir. 2001) ("*H&D Tire II*") (denying request for

a re-hearing); *Johnson v. Am. Gen. Fin., Inc.*, No. 4:02CV62LN, 2003 WL 21749565, at *2 (S.D.

Miss. July 22, 2003).

Given *H&D Tire I* and *H&D Tire II*, federal district courts in Texas have routinely held

that the court does not aggregate punitive damages sought under Texas law.  *See, e.g.*, *Stout v.

Smithfield BioEnergy, LLC,* No. 3:10-CV-1185-M, 2010 WL 5487843, *2 (N.D. Tex. Dec. 30,

2010);  *Sims v. AT & T Corp.*, No. 04-CV-1972-D, 2004 WL 2964983, at *4 (N.D. Tex. Dec. 22,

2004); *Adams v. Nationwide Mut. Ins. Co.*, No. Civ.A. 3:02-CV-1607, 2003 WL 21251734, at *5

(N.D. Tex. 2003); *Trapasso v. Prudential Prop. & Cas. Ins. Co.*, 220 F. Supp. 2d 628, 637 n.3

(E.D. Tex. 2002).  And policy considerations support these holdings.  Congress enacted the

amount in controversy requirement to ensure that "diversity jurisdiction does not flood the

federal courts with minor disputes."  *Exxon Mobil*, 545 U.S. at 552.  If the federal courts were to

aggregate several plaintiffs' "minor disputes" that include requests for punitive damages, the

jurisdictional amount would almost certainly be satisfied.  And that would plainly defeat

Congress's purpose in setting a minimum jurisdictional amount.  *See H&D Tire II*, 250 F.3d at

305-06.

In conclusion, the Fifth Circuit does not allow Defendant to aggregate all of the Plaintiffs'

claims for punitive damages.  *See H&D Tire II*, 250 F.3d at 305-06; *H&D I*, 227 F.3d at 330.

### c.    Value of the declaratory relief

Defendant next contends the Court should include the value of the declaratory relief in

calculating the amount in controversy.  Resp. ¶ 9.  The governing law supports this contention.  If

a plaintiff seeks a declaration regarding liability, the potential liability is the amount in

controversy.  *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977); *Garcia*, 351

F.3d at 640 (citing *Hunt*, 432 U.S. at 347).  In other words, "the amount in controversy is

determined by 'the value of the right to be protected or the extent of the injury to be prevented.'"

*Dow Agroscience, LLC v. Bates*, 332 F.3d 323, 326 (5th Cir. 2003) (quoting *St. Paul*

*Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1252-53 (5th Cir. 1998))*, vacated and*

*remanded on other grounds*, 544 U.S. 431 (2005).

      Although Defendant is correct that the Court must include the value of the declaratory

relief, it is not facially apparent from this Complaint that value of the declaratory relief exceeds

$75,000.  The first problem is that nowhere in the Complaint is there any hint of the value of the

declaratory relief.  Second, it is not even clear exactly what kind of declaration Plaintiffs seek

from the Court.  At first glance, the request for declaratory relief appears to reiterate Plaintiffs'

other claims — namely a declaration that the 2010 Lawsuit's "sole purpose" was harassment and

"Plaintiffs suffered damages as a result."  *See* Compl. ¶ 9.  This aligns with Plaintiffs' other

allegations that Defendant filed the 2010 Lawsuit to cause Plaintiffs emotional distress and to

libel Plaintiffs.  Under this reading, the value of the declaratory relief is the amount of harm

Plaintiffs suffered from the filing of the 2010 Lawsuit.  And the Court has no information to

determine that amount.  For example, the Court does not know if the alleged libel injured

Plaintiffs' reputations such that they could not find new employment.  Or perhaps, the Plaintiffs'

harm was de minimis and they are only suing to prove a point.  In sum, the value of the

declaratory relief is not facially apparent from the Complaint.

Defendant offers a different reading of the declaratory relief claim. Defendant focuses on Plaintiffs' request that the Court declare that "Defendant's federal lawsuit was groundless." Resp. ¶ 8; Compl. ¶ 9. Defendant stresses that the Plaintiffs attached the 2010 Complaint to their current Complaint. *See* Resp. ¶ 7. Accordingly, Defendant argues that Plaintiffs are actually requesting a declaration that Plaintiffs did not commit conversion, did not commit fraud, did not commit misappropriation, and Defendant's request for declaratory relief in the 2010 Lawsuit was groundless. *See* Resp. ¶ 9. Defendant concludes that these declarations are worth more than $75,000 because the extent of the possible liability exceeds $75,000. *See* Resp. ¶¶ 7-9.

The Court agrees that Plaintiff may be seeking a declaration that they did not commit conversion, did not commit fraud, did not commit misappropriation, and that Defendant's request for declaratory relief in the 2010 Lawsuit was groundless. But even under this reading, Defendants have not shown by a preponderance of the evidence that the amount in controversy exceeds $75,000. In the 2010 Complaint, there is no indication of how to value Defendant's claims for fraud, misappropriation, or declaratory relief. 2010 Compl. ¶¶ 12-13, 15. Defendant alleged that Plaintiffs created fraudulent expense reports, but the 2010 Complaint contains no information on the value of those expense reports, or the amount of damage caused by the allegedly fraudulent expense reports. *Id.* ¶ 13. Likewise, Defendant alleged Plaintiffs misappropriated corporate assets, but again, the Court has no indication of the value of the corporate assets or the amount of damage caused by the alleged misappropriation. *Id.* ¶ 15. Finally, Defendant requested the Court declare that Defendant's United States corporate entity, and not Defendant's affiliated Mexican company, employed Plaintiffs. *Id.* ¶ 12. For this claim, the 2010 Complaint provides even less information. *See id.* It does not state why Defendant

12

wanted the declaration or the utility of such a declaration. *See id.* This makes it impossible for the Court to guess how much that declaration is worth.

In contrast to the fraud, misappropriation and declaratory relief claims, Defendant's conversion claim does include some monetary information. *Id.* ¶ 14. The conversion claim states that Plaintiffs converted inventory in an "amount far in excess of seventy-five thousand dollars ($75,000.00)." *Id.* Defendant argues that the Court should accept this at face-value and thus the conversion declaration "alone is in excess of $75,000." *See* Resp. ¶ 9. The Court does not find this persuasive because the statement is conclusory and there are no facts to support Defendant's valuation. *See Dow Agroscience*, 332 F.3d at 326 ("[A] bare allegation, by itself, does not invest a federal court with jurisdiction."); *Asociacion Nacional*, 988 F.2d at 565-66 (rejecting the defendant's "bare allegations" of jurisdiction when the defendant "did not, and probably could not have, offered any facts to support its valuation of plaintiffs' claims"). The Court again has no indication of the type of inventory, the value of the inventory, or even the possible damages suffered by Defendant. Therefore, it is not facially apparent that the amount in controversy in the declaratory judgment claim exceeds the $75,000 jurisdictional minimum. *See White*, 319 F.3d at 675.

It is true that courts generally accept a plaintiff's good faith claim of damages in a complaint to determine the amount in controversy. *St. Paul*, 303 U.S. at 288-89. But that rule applies to a pending case in which the plaintiff initially files in federal court. *See id.* at 288, 290-91. That is not the situation here. Defendant removed this case, and thus Defendant has the burden of showing that the amount in controversy exceeds $75,000. *See Garcia*, 351 F.3d at 638. Defendant cites no authority, and the Court has found none, to suggest that the Court must

accept a defendant's unsubstantiated allegations from a previous lawsuit as *conclusive* to determine the value of declaratory relief in a later removed case.

Moreover, the Court has good reason to not accept Defendant's unsubstantiated allegations from 2010 Lawsuit as conclusive. First, those allegations are almost two years old. Thus, the value of the conversion claim could have changed since then. Moreover, Defendant may now have additional information about the extent of the damages, or lack thereof, given the almost two years it had to investigate the claims. Second, Defendant litigated the 2010 Lawsuit in this Court, and the record shows that Defendant failed to diligently prosecute its case and then dismissed the case on the eve of trial. *See* Compl. ¶ 4; 2010 Mot. to Extend Deadline ¶¶ 4-5; 2010 Stipulation of Dismissal ¶ 2-4. Applying the Court's common sense, it seems unlikely that the parties would have tepidly litigated for over a year, and then just dropped the lawsuit, if the case was really worth well in excess of $75,000. *See Allen*, 63 F.3d at 1336.

In summary, the Complaint is devoid of details or facts that would help quantify the extent of potential liability in this case. As stated above, it is not even clear from the Complaint what relief Plaintiffs seek in their declaratory judgment claim. Under one interpretation, the value of the declaratory relief is how much harm Plaintiffs suffered from the filing of the 2010 Lawsuit. According to the other interpretation, the value of the declaratory relief is the value of Defendant's 2010 Lawsuit. Yet, even if the Court could decipher which interpretation was more likely the correct one, the Court does not have sufficient facts to quantify the value. Thus, the Court holds that Defendant has not shown that it is facially apparent from this Complaint that value of the declaratory relief exceeds $75,000. *See White*, 319 F.3d at 675.

14

### d.      Plaintiffs' counterclaims in the 2010 Lawsuit

Defendant's final argument is that the Court should include Plaintiffs' counterclaims in the 2010 Lawsuit as part of the amount in controversy.  *See* Resp. ¶¶ 7, 9.  However, this argument also fails because Defendant provides no explanation why the Court should include Plaintiffs' counterclaims from the 2010 Lawsuit.  Perhaps, Defendant is suggesting that Plaintiffs seek a declaration that their counterclaims in the 2010 Lawsuit were valid.  But the Complaint makes no such statement.  *See* Compl. ¶ 9.  Rather the Complaint states that "*Defendant's federal lawsuit* was groundless."  Compl. ¶ 9 (emphasis added).

Additionally, the Court notes that Plaintiffs' current claims for IIED, unconscionable conduct, and libel match its previous counterclaims in the 2010 Lawsuit.  Compare Compl. ¶¶ 5-7, *with* 2010 Answers & Countercls. ¶¶ 23-26.  Defendant cannot double count these claims to establish federal jurisdiction.

In summary, the Court rejects Defendant's argument that Plaintiffs' counterclaims from the 2010 Lawsuit should be considered to determine the amount in controversy in this lawsuit.

### e.      Summary and conclusion

In conclusion, Defendant has failed to show by a preponderance of the evidence that jurisdiction is facially apparent.  The Court notes that each Plaintiff presents four claims and seeks actual damages, punitive damages, and attorney's fees.  Accordingly, the amount in controversy could possibly exceed $75,000.  However, Defendant has not shown by a preponderance of the evidence, or more likely than not, that it is facially apparent that the amount in controversy exceeds $75,000.  *See Felton*, 324 F.3d at 774; *Allen*, 63 F.3d at 1336.  The Court must hold Defendant to that standard given that federal courts resolve any doubts about

15

jurisdiction in favor of remand.  *See Dow Agroscience*, 332 F.3d at 326; *Carpenter*, 44 F.3d at 365-66.  Therefore, the Court holds that it is not facially apparent that the amount in controversy exceeds $75,000.

### 2.    Summary judgment-type evidence

Given that Defendant has failed to establish that it is facially apparent that the amount in controversy exceeds $75,000, the Court turns to Defendant's summary judgment-type evidence. *See Garcia*, 351 F.3d at 638-39; *White*, 319 F.3d at 675.   Defendant offers two pieces of summary judgment-type evidence.  Resp. ¶ 10.  The Court examines each.

First, Defendant offers the affidavit of Defendant's general counsel, Vincent LoNigro. Resp. ¶ 10.  In his affidavit, LoNigro repeats the same exact phrase from the 2010 Complaint — Plaintiffs converted property in an "amount far in excess of seventy-five thousand dollars ($75,000.00)."  Resp. Ex. B ¶ 2.  LoNigro does not give any facts about the type of inventory, the value of the inventory, or even the possible damages suffered by Defendant.  *See* Resp. Ex. B ¶ 2. In sum, Defendant is again asking the Court to simply accept its conclusory statement, albeit this time in the form of an affidavit.  This is insufficient to establish jurisdiction given that Defendant has the burden of proof and federal courts resolve any doubts about jurisdiction in favor of remand.  *See Gutierrez*, 543 F.3d at 251; *Asociacion Nacional*, 988 F.2d at 565-66.

Second, Defendant offers evidence that Plaintiffs' salaries ranged from roughly $95,000 to over $200,000.  Resp. Ex. C, ECF No. 6-3.  But the Court is at a loss to understand the relevance of Plaintiffs' salaries.  Plaintiffs are suing for IIED, unconscionable conduct, libel, fraud, and declaratory relief.  Compl. ¶¶ 5-9.  There is no suggestion in Plaintiffs' Complaint that they are suing for lost wages.  *See id.*  And in its Response, Defendant never explains the

relevance of the evidence.  *See* Resp. ¶ 10.  The only connection provided by Defendant is via LoNigro's affidavit.  In that affidavit, LoNigro states that Plaintiffs are suing Defendant in Mexico for lost wages.   Resp. Ex. B ¶ 4.  But Defendant has not explained how that has anything to do with this lawsuit.  *See* Resp. ¶¶ 9-10.

In sum, Defendant's affidavit and evidence of the Plaintiffs' salaries is not sufficient to show by a preponderance of the evidence that the Court has subject matter jurisdiction.

## III.   CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiffs' Motion (ECF No. 5).  The Court **REMANDS** this case back to County Court at Law Number Five of El Paso County, Texas.

The Clerk shall close the case.

**SO ORDERED.**

**SIGNED** on this 14th day of March, 2012.

*Kathleen Cardone*
_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE